| | | |
|---|---|---|
| CAROL B. M., | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:17-CV-3163-BK |
| | § | |
| NANCY A. BERRYHILL, | § | |
| COMMISSIONER, | § | |
| SOCIAL SECURITY ADMINISTRATION | § | |
| DEFENDANT. | § | |

# MEMORANDUM OPINION

The parties have consented to proceed before the undersigned United States magistrate judge. Doc. 14. Pending before the Court are the parties' cross-motions for summary judgment. Doc. 19; Doc. 21. For the reasons stated herein, Plaintiff's *Motion for Summary Judgment*, Doc. 19, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 21, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying her application for period of disability, disability insurance benefits, and supplemental security income under the Social Security Act ("the Act"). Doc. 1 at 1. Plaintiff claims that she became disabled in February 2014, due to back and neck injury, arthritis and joint pain, kidney infections, deteriorating hearing and eyesight, hypoglycemia, headaches, memory loss, depression and loss of confidence. Doc. 13-1 at 232, 236. Plaintiff's claims were denied at all

administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. §405(g). Doc. 1 at 1; Doc. 13-1 at 10, 21, 24.

**B. Factual Background**

Plaintiff was 51 years old on her alleged disability onset date and has been unemployed since October 2014. Doc. 13-1 at 232, 237. She completed one year of college and has held several jobs since 1996, including as cashier, lead clerk, parts puller, teacher's assistant, and waitress. Doc. 13-1 at 237-38.

*Medical Records*

In March 2015, Dr. Linda Ludden, Ed.D., conducted a consultative clinical interview and mental status examination of Plaintiff. Doc. 13-1 at 280. Plaintiff reported a "history of mood disturbance and health impairments," and explained that she was previously diagnosed with depression and her depressive symptoms worsened after her mother died in 2014. Doc. 13-1 at 280-81. Plaintiff stated that she experiences pain in her neck, knee, elbows, and wrists, and can bathe and groom with supervision, shop for groceries using an electric cart, and manage her money, but is unable to do chores or cook. Doc. 13-1 at 282. Plaintiff also reported that she was in a car accident in around 1998 and was hospitalized twice for kidney infections. Doc. 13-1 at 282.

On examination, Dr. Ludden noted that Plaintiff's mood was depressed and her affect flat, but she was "oriented to person, place, time and situation," "appeared to work from an adequate fund of information," and displayed an average intelligence. Doc. 13-1 at 284. Dr. Ludden also observed that Plaintiff had good concentration with average insight, as well as satisfactory judgment. Doc. 13-1 at 284. Plaintiff reported that though she currently experienced no suicidal ideations, she had attempted suicide five years before. Doc. 13-1 at 284.

Ultimately, Dr. Ludden listed Plaintiff's conditions as "Major Depressive Order, Single Episode, Severe," "Problems Related to Other Legal Circumstances," "Tobacco Use Disorder, Moderate," and "Insufficient Social Insurance." Doc. 13-1 at 285.

That same month, Plaintiff underwent a consultative physical examination by Dr. John Wofford, M.D., Doc. 13-1 at 287, during which, Plaintiff reported a "20-year history of osteoarthritis secondary to work related activities and various injuries." Doc. 13-1 at 287. She also complained of "chronic, sharp, dull, aching joint pain, tightness and aching in her neck, sharp low back pain radiating to her lower extremities, and tightness, stiffness, and pressure in her knees." Doc. 13-1 at 287. Plaintiff said her pain was "exacerbated by lifting, carrying, and twisting objects [but] improve[d] with hot water soaks and Aleve." Doc. 13-1 at 287. She reported that she can sit for 10 to 15 minutes, stand for 5 to 10 minutes, walk one block, and lift and carry five pounds repetitively and eight pounds occasionally. Doc. 13-1 at 288.

Upon examination, Dr. Wofford observed "no thyromegaly, thyroid nodule, lymphadenopathy or mass" in Plaintiff's neck, and "no clubbing, cyanosis, or edema" in her extremities. Doc. 13-1 at 289. He found Plaintiff was "alert and had good eye contact and fluent speech," had an "appropriate mood" and "clear thought process," and that her memory "was normal and concentration was good." Doc. 13-1 at 289. Moreover, Dr. Wofford noted that Plaintiff "had a symmetric, steady gait" and "no palpable muscle spasms." Doc. 13-1 at 290. Plaintiff scored fours and fives on a 1-to-5 scale for muscle strength, and her sensory examination "was normal to light touch throughout." Doc. 13-1 at 290. Plaintiff also had no "joint swelling, erythema, effusion, tenderness or deformity," "was able to rise from a sitting position without assistance but had some difficulty getting up and down from the exam table," "was able to walk on heels and toes with moderate difficulty," and "could stand but not hop on

either foot bilaterally." Doc. 13-1 at 290. Dr. Wofford concluded that Plaintiff had "minimal functional impairment," and could sit normally in an eight-hour workday with normal breaks and with "limitations on bending, stooping, crouching, [and] squatting," mild limitations on standing, walking, and lifting and carrying weight, and no limitations on reaching, handling, feeling, grasping, and fingering. Doc. 13-1 at 292.

That same day, Robert Newberry, M.D. reviewed x-rays of Plaintiff's lumbar spine and right knee. Doc. 13-1 at 292. As to her spine, he observed "mild osteoarthritis," but no spondylolisthesis or scoliosis, uniform disc spaces, and unremarkable soft tissues. Doc. 13-1 at 292. As to her knee, he observed "no arthritic change," "preserved" joint space, "[n]o intra articular bodies," and "unremarkable" patella and soft tissues. Doc. 13-1 at 292-93.

In April 2015, Dr. Kim Rowlands, M.D., a non-examining state agency medical consultant ("SAMC"), reviewed the evidence of record available at that time and found that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, and sit, stand and walk for six hours of an eight-hour work day with additional posture limitations. Doc. 13-1 at 97-98. Dr. Rowlands also noted that Plaintiff's "alleged limitations" were "not wholly supported" by the evidence of record. Doc. 13-1 at 98. In June 2015, SAMC Dr. Robin Rosenstock, M.D., made similar findings. Doc. 13-1 at 108-10.

Later in June 2015, Plaintiff went to the Hunt Regional Medical Center complaining of back pain. Doc. 13-1 at 304. Dr. Pretei Lemo examined Plaintiff's lumbar spine and found "[n]o lumbar spine fracture or subluxation," but "suggested degenerative disc disease at L4-5 and L5-S1 with facet hypertrophy." Doc. 13-1 at 304.

In January 2016, Plaintiff was seen again the Hunt Regional Medical Center for "Trauma back sprain." Doc. 13-1 at 298. Dr. James Frame reviewed the results of a CT scan of Plaintiff's

lumbar spine and found: "No lumbar spine fracture or subluxation," an "intact . . .vertebral body height," a "Visualized abdominal aorta normal in caliber," and "Multilevel disc disease." Doc. 13-1 at 298-99. He also reviewed the results of a CT scan of Plaintiff's cervical spine, finding: "no cervical spine fracture," "straightening of the curvature . . . probably due to positioning or muscle spasm," a "lesion," and "[d]isc disease." Doc. 13-1 at 300.

In June 2016, Plaintiff returned to the Hunt Regional Medical Center for an MRI of her lumbar spine. Doc. 13-1 at 328. Dr. Yetunde Ognnaike reviewed MRI results, finding "No lumbar spine fracture" and "Multilevel disc disease." Doc. 13-1 at 328. Plaintiff followed up with Dr. Ognnaike the next month. Doc. 13-1 at 323. Dr. Ognnaike diagnosed Plaintiff with "Intervertebral disc disorders [with] radiculopathy, lumbar region," and advised her to see a "spine specialist asap." Doc. 13-1 at 323-24.

*Administrative Hearing*

A hearing was held before the Administrative Law Judge ("ALJ") in July 2016. Doc. 13-1 at 42. Plaintiff testified that she cannot work because of pain in her left arm and back, which radiates down her legs and causes memory problems. Doc. 13-1 at 49. She explained that "hot baths" and medication help alleviate her pain and that she sometimes uses a walking cane. Doc. 13-1 at 49, 52-53. She also testified that she feels "hopeless" and sometimes "just can't seem to make a decision." Doc. 13-1 at 53-4. According to Plaintiff, on a typical day, she wakes at 7:00 A.M. and watches television or makes phone calls, and later gets up to feed her dogs and "make sandwiches and stuff." Doc. 13-1 at 55. She testified that she is unable to do household chores but can wash dishes using a dishwasher and grocery shops "on occasion." Doc. 13-1 at 56.

A vocational expert ("VE") testified that Plaintiff's past relevant work as a teacher's aide/assistant, parts sales person, waitress and cashier are all classified as "light" work. Doc. 13-

1 at 62-63. The VE opined that jobs exists in the national economy, for a claimant of Plaintiff's age, education, and work experience, that involved "light" exertion and are limited to frequent climbing, balancing, stooping, kneeling, crouching, and crawling. Doc. 13-1 at 63. The VE testified that such a claimant would be able to perform "all of the jobs in [Plaintiff's] past work history," as well as other jobs.

The VE further testified that jobs exist in the national economy that require only "light" exertion with "occasional limitations with regard to postural limitations," such as occasionally climbing and balancing, for a claimant of Plaintiff's age, education, and work experience, who is able to "understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for adequate extended periods, interact with others, and respond approximately to changes in routine work settings." Doc. 13-1 at 64-65. The VE opined that such a claimant would be able to perform "all of [Plaintiff's] jobs except parts sales person," as well as additional jobs identified as "light." Doc. 13-1 at 66. However, the VE also testified that such a claimant would not be able to perform past work or other work if she "would miss up to three days of work per month" because of medical conditions. Doc. 13-1 at 66.

## C. The ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of "intervertebral disc disorders with radiculopathy" and "major depressive disorder, single episode, severe," but did not have an impairment or combination of impairments that met or medically equaled a listed impairment for presumptive disability under the Code of Federal Regulations ("Regulations"). Doc. 13-1 at 27-30. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to "lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently, as well as sit, stand, and walk 6 hours (each) out of an 8-hour workday." Doc. 13-1 at 32. However, the ALJ found that

Plaintiff's ability to perform the full range of "light work" as defined by the Regulations was "reduced by her inability to climb ramps/stairs or ropes/ladders/scaffolds, balance, stoop (i.e., bend at the waist), kneel, crouch (i.e., bend at the knees) and crawl on more than an occasional basis." Doc. 13-1 at 32. The ALJ also found that Plaintiff had the ability to "understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate adequately for extended periods," and "interact with others and respond appropriately to change in a routine work setting." Doc. 13-1 at 32.

The ALJ concluded that Plaintiff was unable to perform "her past relevant work as a teacher's assistant as she actually performed it," but capable of performing such work as it is "customarily performed in the national economy," and, thus, was not disabled under the Act. Doc. 13-1 at 34-35.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be

performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

III.     ANALYSIS

The issues before the Court are:

**A.  Whether the ALJ erred in relying on the assessments of state agency consultants.**

**B.  Whether the ALJ erred in finding that Plaintiff is capable of performing her past relevant work as generally performed in the national economy.**

**C.  Whether the ALJ's hypothetical question to the VE was defective.**

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record.  The Court is not under any obligation to probe the record to find supporting evidence for one side or the other.  *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

**A.  The ALJ properly considered the assessments of the state agency consultants.**

Relying on *Newton v. Apfel*, 209 F.3d 448, 457 (5th Cir. 2000), Plaintiff argues that the ALJ erred in determining Plaintiff's RFC because she relied on assessments of SAMCs that were not based "upon a careful evaluation of the medical evidence."  Doc. 20 at 12-13.  Plaintiff specifically complains that the SAMCs did not consider the results of three subsequent medical procedures in arriving at their opinions.  Doc. 20 at 11.  Defendant responds that although the subsequent procedures "were dated after the State Agency physicians' review, the ALJ did consider [the] records in detail."  Doc. 22 at 5.

Plaintiff's argument lacks merit, and her reliance on *Newton* is misplaced.  In *Newton*, the ALJ "expressly relied" on testimony of a medical expert who "had access to [the plaintiff's]

treatment notes" but not "the significant hospitalization records," and the Court of Appeals for the Fifth Circuit concluded that was error. *Newton*, 209 F.3d at 457. Here, however, the ALJ did not "expressly rely" on the opinions of SAMCs, affording them only "great weight." Doc. 13-1 at 34. It is within the province of the ALJ to "evaluate the degree to which [non-examining source] opinions consider all of the pertinent evidence." *Boothe v. Colvin*, No. 3:12-CV-5127-D, 2013 WL 3809689, at *3 (N.D. Tex. July 23, 2013) (Fitzwater, C.J.) (quoting 20 C.F.R. § 404.1527(c)(3)) (alterations in original). "Although the ALJ must be cognizant of what a non-examiner has not reviewed, the ALJ is not precluded from giving great weight to a non-examiner's conclusions." *Id.*

As is also distinguishable from *Newton*, the ALJ in the instant case considered <u>all</u> of the medical evidence of record—including those medical records that post-dated the consultative examinations and which undergird Plaintiff's argument. *See* Doc. 13-1 at 33 (noting 2016 CT of Plaintiff's lumbar spine); Doc. 13-1 at 33 (noting 2016 CT of Plaintiff's cervical spine); Doc. 13-1 at 34 (noting 2016 MRI of Plaintiff's lumbar spine). An ALJ may properly rely on a non-examining physician's assessment when "those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The ALJ explicitly did so in this case, "giving great weight" to the opinions of the SAMC's that Plaintiff "is able to perform light work with postural limitations," because such "assessment [is] consistent with the record as a whole." Doc. 13-1.

Although Plaintiff complains that the SAMCs did not review the reports of Plaintiff's visits in June 2015, January 2016 and June 2016 to the Hunt Regional Medical Center, she "fails to identify any inconsistencies between the non-examining [SAMCs] opinions and any other medical evidence, [thus, she] fails to show that the ALJ's reliance was unsupported by the

record." *Barlow v. Berryhill*, 700 Fed.Appx. 375, 376 (5th Cir. 2017) (per curium).  Indeed, a review of those records reveals no determination by either doctor of the impact of their findings on Plaintiff's functional capacity or mention of treatment or restrictions.

Thus, Plaintiff's argument fails.

### B.  The ALJ did not err in finding that Plaintiff is able to perform her past relevant work as a teacher's assistant.

Plaintiff argues that the ALJ erred in finding that she could perform her past relevant work as a "teacher's assistant" as generally performed in the national economy because such work "was a composite job, which does not have a counterpart in the Dictionary of Occupational Titles (DOT)."  Doc. 20 at 15.  According to Plaintiff, a "claimant's [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant."  Doc. 20 at 15.  Defendant responds that Plaintiff is mistaken because "[c]omposite jobs are jobs that have significant elements of two or more occupations."  Doc. 22 at 7.  Defendant adds that "no one" found that Plaintiff's past relevant work as a teacher's assistant "amounted to a composite job," Doc. 22 at 7, and [in any event,] Fifth Circuit has essentially found the issue of composite jobs is waived when, as here, the claimant did not cross-examine the vocational expert on the issue." Doc. 20 at 8.

The Court finds that Plaintiff's teacher's aide/assistant job is not a composite job under the DOT.  Social Security Ruling 82-61 provides that "[c]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT."  SSR 82-61, 1982 WL 31387, at *2.

Here, Plaintiff reasons that since her job as a teacher's assistant involved tasks not included in the job description for "teacher aide" in the DOT—such as "escorting students to other classes, subduing and restraining students, moving desks and computers, [and] working

with emotionally disturbed students"—her job was composite. Doc. 20 at 15-16. Plaintiff argues that the additional those tasks "fit" under a variety of other DOT codes. *See* Doc. 20 at 16. Plaintiff, however, "fails to show that [such tasks were] *significant elements* of a separate occupation." *Vanhuss v. Berryhill*, No. 3:17-cv-1327-M-BN, 2018 WL 2335467, at *4 (N.D. Tex. Apr. 25, 2018) (Horan, J.) (emphasis added); SSR 82-61, 1982 WL 31387, at *2 (a composite job contains "significant elements of two or more occupations"). That certain tasks Plaintiff performed "fit" into other DOT codes does not establish that such tasks were significant elements of a separate occupation.

Moreover, if Plaintiff disagreed with the VE's characterization of her prior work, "she was obligated to press the issue on cross-examination [because] [a]s the claimant, she retains the burden to establish that she is unable to perform her past relevant work." *Holland v. Colvin*, No. 3:14-CV-2964-K-BH, 2015 WL 5437727, at *13 n.4 (N.D. Tex. Aug. 31, 2015) (Ramirez, J.)); *see also Martinez v. Berryhill*, No. SA-17-CV-0027-ESC, 2017 WL 8180457, at *7 (W.D. Tex. Nov. 14, 2017) (same). Here, while Plaintiff's counsel cross-examined the VE, Doc. 13-1 at 67, counsel did not do so regarding the alleged conflict between the VE's characterization of Plaintiff's past work and the DOT. *Brown v. Astrue*, No. 3:08-CV-0255-D, 2009 WL 64117, at *6 (N.D. Tex. Jan. 12, 2009) (Fitzwater, C.J.) (plaintiff failed to "cross-examine the VE regarding the putative conflict with the DOT, even though the VE testified that his conclusions were in accord with the DOT."). Consequently, that issue is effectively waived and Plaintiff's argument lacks merit. *See Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000) (a plaintiff "should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of [a vocational expert] witness and the voluminous provisions of the DOT, and then

present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing").

### C. Assuming, arguendo, that the ALJ's hypothetical question was defective, it is not reversible error

Plaintiff argues that "the ALJ's hypothetical question to the VE in this case does not properly include all of [Plaintiff's] disabilities as recognized by the ALJ as it lacks in specificity so as to preclude this Court from conducting meaningful review." Doc. 20 at 18. Plaintiff alleges the ALJ erred because she did not define "adequately for extended periods" or "specify how long [Plaintiff] could interact with others," when positing the hypothetical. Doc. 20 at 18. Defendant counters that in the hypothetical, "the ALJ is only required to incorporate limitations that she recognizes," and that "vocational expert testimony is irrelevant at step four." Doc. 22 at 9. Moreover, Defendant argues that Plaintiff "had the opportunity to cross-examine the vocational expert on [this issue] and she did not do so." Doc. 22 at 9.

As Defendant correctly notes, Plaintiff's counsel had the opportunity to cross-examine the VE on this issue but failed to do so. *See* Doc. 13-1 at 67. Therefore, even assuming, *arguendo*, that the ALJ's hypothetical question was deficient in the manner advanced by Plaintiff, such error is not reversible. *See, e.g.*, *Wise v. Barnhart*, 101 Fed. Appx. 950, 951 (5th Cir. 2004) (per curium) (finding that where a claimant's "representative was allowed to cross-examine the [VE] regarding the [ALJ's hypothetical . . . even assuming, arguendo, that the [ALJ's] hypothetical was deficient in the respects urged on appeal, because [the claimant's] representative was afforded an opportunity to correct any perceived deficiencies, there is no reversible error") *see also* *Browning v. Colvin*, No. 3:13-CV-1562-D, 2013 WL 6242087, at * (N.D. Tex. Dec. 3, 2013) (Fitzwater, C.J.) (same). Consequently, Plaintiff's argument fails.

## IV.    CONCLUSION

For the reasons stated here, Plaintiff's *Motion for Summary Judgment*, Doc. 19, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 21, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED.**

March 27, 2019.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE